# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **MICHAEL TRANCHINA** | * | **CIVIL ACTION** |
| | * | |
| **VERSUS** | * | **NO. 05-3987** |
| | * | |
| **DYNAMIC INDUSTRIES, INC., ET AL.** | * | **SECTION "L" (1)** |

## ORDER & REASONS

Before the Court are the following motions: Defendant Dynamic Industries, Inc.'s Motion for Summary Judgment (Rec. Doc. No. 70); Defendant Southern Transport Service, Inc.'s Motion for Summary Judgement (Rec. Doc. No. 75); and Defendant Southern Transport Service, Inc.'s Motion for Summary Judgment (Rec. Doc. No. 80).   For the following reasons, the motions are **DENIED**.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of personal injuries allegedly suffered by the Plaintiff, Michael Tranchina, an employee of Defendant Dynamic Industries, Inc. ("Dynamic").  On October 10, 2005, the Plaintiff alleges he was injured while in service of the M/V SOUTHERN STAR, a vessel owned and operated by Defendant Southern Transportation Services, Inc. ("Southern"), while the vessel was in navigation in the Gulf of Mexico.  The Plaintiff was departing the M/V SOUTHERN STAR by a swing rope when he allegedly fell and fractured his right leg.  The Plaintiff initially filed suit against Dynamic in this Court asserting negligence claims under the Jones Act, 46 U.S.C. §688(a), as well as unseaworthiness claims under general maritime law.[1] Plaintiff subsequently amended his complaint to add causes of action against Southern for

_____

[1]      Rec. Doc. No. 1

negligence under the Jones Act and claims under general maritime law.[2]

Dynamic previously filed a motion for summary judgment arguing that the Plaintiff is not a seaman and thus is not entitled to recover from Dynamic Industries, Inc. under the Jones Act or general maritime law.[3]  The Plaintiff did not contest or otherwise oppose the motion, and, accordingly, the Court granted the Dynamic's motion for summary judgment.[4]

Louisiana Workers' Compensation Corporation ("LWCC") has filed a intervention complaint for indemnification.[5]  LWCC argues that it is subrogated to the rights of the Plaintiff to the extent the Plaintiff has received payments under the workers' compensation insurance policy issued to the Defendant.

Southern then filed a Third-Party Complaint against Dynamic asserting a claim for defense and indemnity pursuant to contract.[6]  Southern states that, at the time of the Plaintiff's injuries, it was providing services to El Paso, who owns and operates the platform that the Plaintiff was assigned to at the time of his injuries.  Dynamic provided services to El Paso pursuant to a Master Service Agreement, dated March 10, 2004, whereby Dynamic agreed to defend, indemnify and hold harmless members of the "Company Group," as that term is defined in the Master Service Agreement, from any personal injury, illness or death claims from Dynamic employees.  Southern argues that it is a member of the "Company Group"and is

---

[2]     Rec. Doc. No. 7.

[3]     Rec. Doc. No. 31.

[4]     Rec. Doc. No. 37.

[5]     Rec. Doc. No. 46.

[6]     Rec. Doc. No. 59.

therefore entitled to indemnity from Dynamic.

The Plaintiff then filed a Third Amended Complaint asserting claims against Southern for the negligence of its vessel under general maritime law and pursuant to 33 U.S.C. §§ 905 and/or 933.[7]

## II.    PRESENT MOTIONS

Before the Court are three motions for summary judgment, all of which center on the relationship between Dynamic and Southern.  First, Dynamic moves from summary judgment arguing that Southern is not entitled to a defense and indemnity under the Master Service Agreement.  According to Dynamic, the Master Service Agreement applies only to services performed within the United States or the territorial waters of the United States.  The accident that allegedly caused Plaintiff's injuries occurred when he landed on the VK-76, which is located sixty-eight nautical miles from the United States' shoreline, and therefore is beyond the scope of the Master Service Agreement.  Accordingly, Dynamic argues that Southern is not entitled to a defense and indemnity.

Southern opposes the motion and argues that all of Dynamic's activities with respect to the services it provided to El Paso on the VK-76 are in conformity with the terms of the Master Service Agreement: Dynamic and El Paso agreed on a price and services to be performed consistent with the Master Service Agreement; Dynamic notified El Paso of the Plaintiff's accident consistent with its obligations under the Master Service Agreement.  Further, Southern points to the deposition testimony of Craig Collins, Dynamic's corporate representative, who testified that he was not aware that Dynamic needed a separate contract when performing work

---

[7]        Rec. Doc. No. 62.

3

for El Paso farther than 12 nautical miles from shore.  Southern also argues that Dynamic's position is inconsistent with the terms of the Master Service Agreement itself which takes into consideration that work may be performed in international waters.

Southern has filed two motions for summary judgment as well.  First, Southern moves for summary judgment seeking to have LWCC's intervention against it dismissed with prejudice. Southern argues that under the terms of the Master Service Agreement, Dynamic agreed to protect El Paso, and its contractors and subcontractors, from claims arising from injury to Dynamic's employees by agreeing to name El Paso and its contractors and subcontractors as additional insured and waive any rights to subrogation.  This case involves an injury to one of Dynamic's employees and now Dynamic's insurer is attempting to recover from Southern, a party for whom Dynamic agreed to waive subrogation.

LWCC opposes the motion and argues that the terms of the Master Service Agreement are somewhat inconsistent as to whether Dynamic was required to waive subrogation in favor of Southern. Further, LWCC points out that there is an issue of whether the Master Service Agreement even applies to this incident in that it falls outside the scope of the written agreement. LWCC also raises the issue that there is insufficient proof to show a contractor or subcontractor relationship between El Pase and Southern.  Finally, LWCC argues that even if subrogation has been waived, it still has a right to seek an offset pursuant to 33 U.S.C. § 933.

In its second motion for summary judgment, Southern seeks summary judgment that it is entitled to coverage as an additional insured under Dynamic's liability policies and/or on its entitlement to defense and indemnity.  Like in its previous motions, Southern again pointed to the language of the Master Service Agreement for its entitlement to defense and indemnity and

4

coverage under Dynamic's liability policies.  With respect to its right to be named as an additional assured under Dynamic's liability policies, Southern points to section 11 of the Master Service Agreement that requires that Dynamic named Company Group, as that term is defined in the Master Service Agreement, as an additional insured, and that Southern is part of the "Company Group."  With respect to its right to defense and indemnity, Southern points to section 9(c)(I) of the Master Service Agreement which requires Dynamic to defend and indemnify members of the Company Group.

Dynamic opposes the motion and asserts the same arguments made in support of its motion for summary judgment.  Again, Dynamic argues that the Master Service Agreement applies only to services performed within the United States or the territorial waters of the United States.  The accident that allegedly caused Plaintiff's injuries occurred when he landed on the VK-76, which is located sixty-eight nautical miles from the United States' shoreline, and therefore is beyond the scope of the Master Service Agreement.  Accordingly, Dynamic argues that Southern is not entitled to defense and indemnity.

## III.  LAW & ANALYSIS

### A.  Summary Judgment Standard

Summary judgment is only appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  When considering a motion for summary judgment, the district court "will review the facts drawing all inferences most favorable to the party opposing the motion."  *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986).  "A factual dispute is 'genuine' if the evidence is such

5

that a reasonable jury could return a verdict for the nonmoving party.  A fact is 'material' if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989).  If the party moving for summary judgment demonstrates the absence of a genuine issue of material fact "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995).

### B.   Whether the Master Service Agreement Applies to the Plaintiff's Accident

The Master Service Agreement is governed, to the maximum extent permitted by law, by the general maritime law of the United States, and, in those situations where the general maritime law does not apply, by the laws of Texas.   When interpreting a maritime contract, the general rules of contract construction and interpretation apply. *See Marine Overseas Services, Inc. v. Crossocean Shipping, Co. Inc.*, 791 F.2d 1227 (5 th Cir.1986); *Ogea v. Loffland Brothers Co.*, 622 F.2d 186 (5 th Cir.1980).  Each provision of a contract must be read in light of others so as to give each the meaning reflected by the contract as a whole. *Southwestern Engineering Co. V. Cajun Elec. Power Co-op., Inc.*, 915 F.2d 972 (5th Cir.1990).  Finally, each provision of a contract must be given a meaning which renders it, along with all other provisions, effective rather than meaningless. *See Lewis v. Hamilton*, 652 So.2d 1327 (La.1995).

The Master Services Agreement states that the "agreement covers only Services to be performed within the United States of America and the territorial waters of the United States of America." *See*, § 3(a) of the Master Services Agreement, Rec. Doc. No. 70, Exhibit A.  The term "territorial waters of the United States of America" is not defined in the Master Services Agreement.  *See id*.   "The territorial seas of the United States ... extends 12 nautical miles from

the baselines of the United States determined in accordance with international law."  54 F.R. 777, Pres. Proc. No. 5928.  As stated above, the accident in question took place on the VK-76, which is located sixty-eight nautical miles from the United States' shoreline, and therefore, outside of the territorial waters of the United States.

Southern appears to concedes the point that the Plaintiff's accident took place outside of the territorial waters of the United States.  Nevertheless, Southern argues that because Dynamic and El Paso acted as thought the Master Service Agreement applied to the work where the Plaintiff's accident took place, the terms of the Master Service Agreement do apply despite the Scope provisions detailed above.  Southern also points to the deposition testimony of Craig Collins, the corporate representative for Dynamic, who testified that there were no other master service agreements in place at the time of Plaintiff's accident and that he was unaware of the need for a different contract when doing work outside of the territorial waters of the United States.

The Master Service Agreement clearly defines the scope of work that it applies to:  work done in the United States or the territorial waters of the United States.  The work in question was done clearly outside of this scope and, therefore, the terms of the Master Service Agreement do not apply to the work.  Southern argues that Section 11(d) of the Master Service Agreement takes into consideration that work may be done "offshore" or in "international waters."  The Court disagrees.  Section 11(d) of the Master Service Agreement does not use the term "international waters," and second, this section deals with the need for Dynamic to obtain insurance coverage if the Louisiana Oilfield Anti-Indemnity Act (the "LOAI") applies.  According to this section, if the work in question is non-maritime and is being done "in or

offshore Louisiana" such that the LOAI applies, then Dynamic will name the Company Group as an additional insured.  The term offshore is not defined in the agreement, so it is naturally limited by the Scope provision of the Master Services Agreement.

However, Southern argues that during Mr. Collins testimony he stated that Dynamic received a work request from El Paso for the work in question and then issued a price quote to El Paso for the work to be performed.  Also, upon the completion of the work, Dynamic sent to El Paso a completion notification form.  All of these actions, according to Southern, were in accordance with the Master Service Agreement and show that Dynamic and El Paso believed that the Master Service Agreement controlled the work in question.  Southern has not provided to the Court copies of any of these documents, and the Court cannot determine what affect, if any, these may have in determining the contractual relationship between Dynamic and El Paso at the time and location of the Plaintiff's injuries.  Accordingly, there are unresolved factual issues and, therefore, summary judgment is inappropriate at this time.

## IV.    CONCLUSION

Accordingly, **IT IS ORDERED** that  Defendant Dynamic Industries, Inc.'s Motion for Summary Judgment (Rec. Doc. No. 70) is **DENIED**;

**IT IS FURTHER ORDERED** that Defendant Southern Transport Service, Inc.'s Motion for Summary Judgement is **DENIED**; and

**IT IS FURTHER ORDERED** that Defendant Southern Transport Service, Inc.'s

Motion for Summary Judgment (Rec. Doc. No. 80) is **DENIED**.

New Orleans, Louisiana, this 7th day of August, 2008.

_____

UNITED STATES DISTRICT JUDGE